**G. C. WESTERVELT v. ISTOKPOGA CONSOLIDATED SUB-DRAIN-AGE DISTRICT, et al.**

28 So. (2nd) 859                                    January Term, 1946
May 28, 1946                                                Division B
Rehearing granted June 26, 1946

*Lewis E. Purvis* and *J. Lewis Hall,* for petitioner.

*Mabry, Reaves, Carlton, Anderson & Fields,* for respondents.

THOMAS, J.:

The questions involved in this controversy are presented to us by petition for certiorari to review the ruling of the chancellor that certain parts of the answer withstood a motion to strike them.

The suit was brought by appellant, under authority of Section 25 of Chapter 14736, Laws of Florida, Acts of 1931, to foreclose liens of the appellee-sub-drainage district on certain lands, he being the owner of nearly $200,000 worth of its obligations and the district having failed to bring suit to collect delinquent taxes.

According to the allegations of the bill, Istokpoga Sub-Drainage District was organized under the general drainage laws enacted in 1913 (Chapter 6458, Laws of Florida, now

Chapter 298, Florida Statutes, 1941 and F.S.A.) and continued to function as a drainage district until 1931 when, by Chapter 14736, supra, enacted that year, it and a district known as Indian Prairie Sub-Drainage District were abolished and the lands located in the former were incorporated in The Istokpoga Consolidated Sub-Drainage District.

By Chapter 10692, Laws of Florida, Special Acts of 1925, the original district had been empowered to borrow money, to complete the work contemplated in the plan of reclamation, and to execute promissory notes as evidence of the indebtedness.

The obligations held by the appellant fall, roughly, into three classes: (1) 29 notes of Istokpoga Sub-Drainage District; (2) 14 notes of the consolidated district; and (3) 9 warrants. The instruments in the first class are signed variously by the president and secretary-treasurer, the secretary-treasurer, the secretary, the president and secretary, the treasurer, and (one of them) by W. H. Hylton, as being the person who on all the others was described either as treasurer, secretary, or secretary and treasurer. Each of the fourteen notes executed by the consolidated drainage district was signed by this same person, who was described on each of them as secretary-treasurer. All nine warrants were signed by G. C. Westervelt, "Acting President of District," and purported to be the obligations of Istokpoga Consolidated Sub-Drainage District. All fifty-two of the instruments bore the corporate seal except the last one, which was issued 20 December 1941.

From our perusal of the record we have concluded that there is need only for us to discuss the defenses which are set out in paragraphs 1-A to 10-A of the answer of certain of the individuals who were joined as defendants with Istokpoga Consolidated Sub-Drainage District.

In three paragraphs of the answer (3-A, 4-A, and 9-A) the defendants alleged that the obligations which we have described were barred by the Statute of Limitations because the cause of action did not accrue within five years. Even this defense available in an action on the obligations, in view of the

facts alleged that all of the obligations were under seal save one which was executed within the last five years it is inappropriate in this suit, which is not one based on failure to pay the indebtedness. We find in referring again to Section 25 of Chapter 14736, supra, that tax liens declared in the preceding sections may be enforced in a certain manner, and that the duty is imposed upon the board of supervisors to institute suits against lands on which the drainage taxes have not been paid. In the event suit is not instituted by the district to enforce the collection of delinquent taxes, then the holder of any bond or note has the right to sue and to make the district a party defendant. Proceeds of sales made pursuant to final decrees entered in such suits must be paid to the treasurer of the district and "accounted for by him the same as the drainage taxes." As we have already pointed out, the bill in the instant case contained a prayer that the court determine the liens of the consolidated sub-drainage district upon the various portions of land affected by the litigation and that the land be sold to satisfy any decree entered.

It is obvious that this is not primarily a suit upon the notes and warrants now in the hands of the appellant, but that it is one by him, in lieu of the district, to foreclose the liens which the district has failed to foreclose, and that the description of the indebtedness in the bill serves principally to show that he is qualified to bring the action under Section 25, supra. It should be borne in mind that the answer with which we are dealing is not one of the district, but of the owners of land on which the drainage taxes have not been paid.

It may be advisable for us to discuss the question raised (in paragraph 8-A) that the appellant had no right to bring the suit because he was not in fact a "holder of any bond or bonds or note or notes issued by the district." the instruments we have detailed not having been signed by the supervisors of said drainage district. All notes executed by the original district were authorized under Section 2, Chapter 10692, supra, in which it was provided that the district could "borrow money . . . and . . . execute . . . promissory notes of said District for money so borrowed . . . " We have found nothing in this act which required that each of the notes should be

signed by all members of the board, and it is our view that when they were issued, bearing the corporate seal and signed as we have already described, there was a sufficient compliance with the law. We shall indulge the presumption, against the pleader, that the corporate seal was affixed at the direction of the board of supervisors and that the officer who actually signed was empowered .to execute the instruments to bind the district.

We see no reason to discuss the several notes and warrants with respect to the manner and time of execution, as we are convinced that all were not invalid, if any one of them were, and if any one of them was valid, appellant was qualified to sue, for, again quoting Section 25 of Chapter 14736, supra, "the holder of any bond or . . . note" may institute foreclosure.

In paragraph 1-A of the answer the defendants gave a rather extended account of the doings of the board of supervisors as reflected by the minutes from the year 1924 until the year 1931 when the district was consolidated, as we have explained. This portion of the pleading, taken alone, does not indicate just what was relied upon as a defense to the suit, but when it is considered in connection with paragraphs 2-A and 5-A it seems to constitute a challenge to the validity of the notes because they were not issued to secure money to pay expenses of organizing the district, effecting the plan of reclamation, etc. Here again we find a challenge to the validity of the obligations on the various other grounds, such as the failure of all members of the board to sign them and their issuance (in the case of obligations of the original district) after the enactment of the consolidation act. Many of the points raised in these paragraphs of the answer have been disposed of by the comment we have already made, and we think the others are not tenable in view of what we wrote in Baldwin Drainage District v. Macclenny Turpentine Company, 154 Fla. 525, 18 So. (2nd) 792.

The record does not disclose a paragraph designated "6-A."

In paragraph 7-A there appears a chronicle of certain actions of the board of supervisors toward the passage of the

consolidation act in order that financing might be secured through Reconstruction Finance Corporation, the Federal Emergency Administration or the Civil Works Administration. We do not find that in its present form this part of the answer presents a defense, and we think it should have been stricken. It concludes with an attack on the constitutionality of Chapter 17436, supra, but from the grounds on which the assault was based—that is, (1) continuance of the plans of reclamation after consolidation, (2) inclusion of new territory and continuance of a third plan for that area, and (3) the criticism of the composite pattern of reclamation—we are far from convinced that the act offends against the Constitution. Counsel for appellees admit in their brief that the act is "in the main" constitutional.

Paragraph 10-A is introduced with allegations that certain properties in the district have been released for the payment of sums in varying amounts, supposedly by the surrender of past-due obligations instead of the payment of cash. The pleaders follow this by giving the details of a suit by one Edward Major Campbell in the federal court against the board of supervisors seeking the appointment of a receiver. Sometime after that, so the averments continued, a receiver was appointed, and eventually the judge of the district court authorized the receiver to accept obligations for payment of assessments upon a reduced basis. Apparently one of those taking advantage of the discount was a company of which the present appellant was president. The defendant admits that although not parties to the cause in the federal court they were given opportunity to compromise their claims also, but they now complain that their property could not in good conscience be charged with any sum. It has not been made clear to us what bearing this litigation in the federal court has upon the present controversy.

We hold the conviction that paragraphs 1-A to 10-A (except 6-A which seems to have been omitted) of the answer should have been stricken, and we therefore grant the petition for certiorari and quash the order of the chancellor denying the motion to strike them.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.

220

ON REHEARING

Opinion filed October 18, 1946

PER CURIAM:

A rehearing having been granted in this cause and the case having been further considered upon the record and upon the briefs and argument of counsel for the respective parties; it is thereupon ordered and adjudged by the Court that the judgment of this court filed herein on May 28, 1946 holding that paragraph 1-A to 10-A (except 6-A which seems to have been omitted) of the Answer should have been stricken, and granting petition for writ for certiorari and quashing the order of the chancellor denying motion to strike them, be and it is hereby reaffirmed and adhered to on rehearing.

CHAPMAN, C. J., TERRELL, BROWN, BUFORD and THOMAS, JJ., and BARNS, Associate Justice, concur.

ADAMS, J., not participating.